UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HOSMER<br>410 Hill Street<br>Niles, Michigan 49120<br><br>on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>LANE LOGIX, LLC<br>c/o CT Corporation System<br>4400 Easton Commons Way Ste. 125<br>Columbus, Ohio 43219<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE<br><br><br>**PLAINTIFF'S COMPLAINT**<br><br>(Jury Demand Endorsed Herein) |

Now come Plaintiff Patricia Hosmer, by and through counsel, and for her Complaint against Defendant Lane Logix, LLC ("Lane Logix" or "Defendant"), states and alleges the following:

## INTRODUCTION

1.    This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its traffic controllers, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.     Venue is proper pursuant to 28 U.S.C. 1391(b) because Defendant is incorporated in Ohio, has its principal place of business located at 8045 Dawnwood Avenue, Canton, Ohio 44721, conducts business throughout this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

4.     At all times relevant herein, Plaintiff Patricia Hosmer was a citizen of the United States.

5.     At all times relevant herein, Plaintiff was an employee within the meaning of 29 U.S.C. 203(e) and R.C. § 4111.03(D)(3).

6.     At all times relevant herein, Defendant was an employer within the meaning of 29 U.S.C. 203(d).

7.     At all times relevant herein, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

8.     At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

9.     At all times relevant herein, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10.     Written consents to join this action as to Count I, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

11.     Defendant provides traffic control services at worksites throughout the United States, such as one-lane flagging operations and multi-lane road closures.  On a daily basis, Defendant deploys traffic controllers throughout their main focus areas of Ohio, Western

2

Pennsylvania, Northern West Virginia, Indiana, Michigan, and Kentucky, but it is certified in 40 states and offers traffic controller services across the country.

12.     Plaintiff Patricia Hosmer was employed by Defendant as a crew lead traffic controller between February 2019 and October 2021.

13.     Other similarly-situated employees were employed by Defendant as traffic controllers, crew lead traffic controllers and/or substantially similar positions performing substantially similar job duties and/or responsibilities (collectively referred to as "traffic controllers").

14.     Plaintiff and other similarly-situated traffic controllers were employed by Defendant as non-exempt employees under the FLSA.

15.     Plaintiff and other similarly-situated traffic controllers were paid an hourly wage.

16.     Plaintiff and other similarly-situated traffic controllers provided temporary traffic control services at worksites, such as one-lane flagging operations or multi-lane road closures.

17.     Defendant requires Plaintiff and other similarly-situated traffic controllers to work in pairs.

18.     Defendant requires certain traffic controllers, including Plaintiff, to drive Defendant's vehicles to and from their worksites.

19.     Defendant requires its traffic controllers who drive Defendant's vehicles to provide transportation to and from worksites to non-driver traffic controllers ("work partners") in Defendant's vehicles.

20.     Defendant assigns traffic controllers who drive Defendant's vehicles their work partners each day and requires them to pick up their work partners from their homes and drive them to the worksites or AEP work shops.

3

21.     Defendant's work partner assignments can vary from day to day.

22.     Plaintiff and other similarly-situated traffic controllers who drive Defendant's vehicles are responsible for coordinating pickup times and locations with their work partners.

23.     Defendant prohibits traffic controllers and work partners from driving their personal vehicles to worksites for safety and liability reasons.

24.     Plaintiff and other similarly-situated traffic controllers who drive Defendant's vehicles are also responsible for driving their work partners home and dropping them off each day.

25.     Plaintiff and other similarly situated traffic controllers who drive Defendant's vehicles were required to deviate from their normal commute to pick up, transport, and/or drop off their assigned work partner(s) from the assigned work partner's home and/or worksites.

26.     Defendant designates the work partner that each traffic controller must pick up and drop off each day.

**(Failure to Pay For All Hours Worked)**

27.     Plaintiff and other similarly-situated traffic controllers drove to and from their worksites in a vehicle – a pick-up truck – provided to them by Defendant.

28.     Each day, Plaintiff's and other similarly-situated traffic controllers' starting and ending points were either one of Defendant's places of business or their homes.

29.     Regardless of their starting points each day, Plaintiff and other similarly-situated traffic controllers who drove Defendant's vehicles were not paid for the time they spent picking up, transporting, and/or dropping off their work partners.

30.     Plaintiff and other similarly-situated traffic controllers clocked in after they arrived at the assigned worksite and checked in with their respective foreman each day.

31.     Plaintiff and other similarly-situated traffic controllers clocked out before they left the worksite each day.

32.     Plaintiff and other similarly-situated traffic controllers who drove Defendant's vehicles were not paid for performing the following work before arriving to the worksites and/or after leaving the worksites:

> a)     Driving Defendant's vehicles from their homes to pick up their work partners at their homes or one of Defendant's places of business and then driving their work partners to the worksites; and/or
>
> b)     Driving Defendant's vehicles from the worksites to their work partners' homes or one of Defendant's places of business at the end of the day.

33.     The activities listed above constituted Plaintiff's and other similarly-situated traffic controllers' principal activities, were an integral and indispensable part of their principal activities, were required by Defendant, and were performed for Defendant's benefit.

**(Failure to Pay for Time Spent Picking Up, Transporting,
and Dropping Off Other Employees)**

34.     Before driving to the worksites, Plaintiff and other similarly-situated traffic controllers were required to pick up their assigned work partners from their homes and/or one of Defendant's places of business and transport them to the worksites.

35.     After leaving the worksites, Plaintiff and other similarly-situated traffic controllers were required to transport their assigned work partners back to their homes and/or one of Defendant's places of business.

36.     Defendant's vehicles have GPS tracking devices on them.

37.     Plaintiff estimates that she spent approximately 20-30 minutes per day driving out of her way to pick up, transport, and drop off her assigned partners, five days per week, for approximately one and half (1.5) to two and a half (2.5) hours per week.

5

38.     Having to pick up, transport, and/or drop off their assigned partners added this additional one and half (1.5) to two and a half (2.5) hours of drive time, and took Plaintiff and other similarly-situated traffic controllers beyond their normal commute, when compared to a direct commute to a worksite.

39.     The time Plaintiff and other similarly-situated traffic controllers spent picking up, transporting, and/or dropping off other employees was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity each workday, and, thus, was compensable under the continuous workday rule.

40.     In the alternative, the time Plaintiff and other similarly-situated traffic controllers spent picking up, transporting, and dropping off other employees was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

41.     Plaintiff and other similarly-situated traffic controllers could not dispense with their traffic controller activities, job duties, and/or responsibilities without their work partners because they could not perform their jobs without the help of their work partners.  It is not possible for one person to perform the job of a traffic controller, and they certainly could not perform their job in a safe manner by themselves.

42.     Traffic controllers have one of the most dangerous jobs in the country.  Even if a traffic controller has the best training and is paying attention to what is going on around them at all times, they still put their lives in danger every day to direct traffic in work zones and make conditions safer for workers and drivers.

**(Failure to Pay Overtime Compensation)**

43.     Plaintiff and other similarly-situated traffic controllers regularly worked 40 or more hours per week.

44.     As a result of Defendant's practices and policies of not paying Plaintiff and other similarly-situated traffic controllers for all of the above-described work, Plaintiff and other similarly-situated traffic controllers were denied significant amounts of overtime compensation.

**(Failure to Keep Accurate Records)**

45.     Defendant failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly-situated traffic controllers.

**(Defendant Willfully Violated the FLSA)**

46.     Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

47.     Plaintiff brings Count One of this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

48.     The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff herself is a member, is composed of and defined as follows:

> All current and former traffic controllers, crew lead traffic controllers, and other employees performing substantially similar job duties and/or responsibilities employed by Lane Logix, LLC who drove a Lane Logix vehicle at any time between November 3, 2018 and the present.

49.     At this time, Plaintiff is unable to state the exact size of the potential class, but upon information and belief, avers that it consists of at least 50 employees.

50.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C.  § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.  In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their wages and claims for unpaid wages and damages.  Plaintiff is a representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

51.     These similarly-situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.  These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT ONE
**(Fair Labor Standards Act Violations)**

52.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

53.     Defendant's practices and policies of not paying Plaintiff and other similarly-situated traffic controllers for all time worked and overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219.

54.     Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly-situated traffic controllers violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR 516.2(a)(7).

8

55.     By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

56.     As a result of Defendant's practices and policies, Plaintiff and other similarly-situated traffic controllers have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A.     Issue an order permitting this litigation to proceed as a collective action;

B.     Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C.     Award Plaintiff and the class she represents actual damages for unpaid wages;

D.     Award Plaintiff and the class she represents liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class;

E.     Award Plaintiff and the class she represents pre- and post-judgment interest at the statutory rate;

F.     Award Plaintiff and the class she represents attorneys' fees, costs, and disbursements; and

G.     Award Plaintiff and the class she represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

 /s/ Chastity L. Christy
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC

9

The Heritage Building, Suite 250
34555 Chagrin Blvd.
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
chastity@lazzarolawfirm.com
anthony@lazzarolawfirm.com
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury on all eligible claims and issues.

 /s/ Chastity L. Christy
One of the Attorneys for Plaintiff